UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Bolus A. D., | Case No. 0:18-cv-1557-WMW-KMM |
| Petitioner, | |
| v. | |
| Secretary of Homeland Security; Jefferson Session, *Attorney General*; Scott Baniecke, *ICE Field Director*; Kurt Freitag, *Freeborn County Sheriff*; | REPORT AND RECOMMENDATION |
| Respondents. | |

---

Bolus A. D. ("Mr. D.") brings this habeas corpus action under 28 U.S.C. § 2241 to challenge his ongoing detention by immigration authorities pending the completion of administrative proceedings to remove him from the United States. Pet., ECF No. 1. Mr. D has now been in the custody of Immigration and Customs Enforcement ("ICE") for over 13 months. For the reasons that follow, the Court recommends that his habeas petition be granted and an immigration judge be required to hold a bond hearing to make an individualized determination regarding Mr. D's continued detention.

I.   Background

Mr. D is a native and citizen of Sudan. He originally came to the United States as a refugee in 2012. Decl. of John Ligon ("Ligon Decl.") ¶ 4, Ex. 1, ECF No. 20. In January 2016, Mr. D was convicted of motor-vehicle theft, *id.* ¶ 5, Ex. 2,[1] and in December 2017, he was convicted of second-degree assault with

---

[1] Mr. D was arrested in April of 2016 by immigration officials and charged as a removable alien because he was convicted of an aggravated felony relating to a theft offense. Ligon Decl. ¶ 8, Ex. 3. He applied for and was granted a waiver of excludability with the United States Citizenship and Immigration Service ("USCIS"), so he was released from ICE custody in July 2016. Ligon Decl. ¶¶ 9–11. This instant habeas petition challenges only the period of his detention when he was arrested by immigration authorities again in December 2017, as described below.

1

a dangerous weapon, *id.* ¶ 14, Ex. 4. Because of the latter conviction, he was taken into ICE custody on December 22, 2017, and removal proceedings were commenced. *See* Ligon Decl. ¶ 15.

An immigration judge held removal hearings for Mr. D on January 16, 2018, Ligon Decl. ¶ 16, and April 12, 2018, *id.* ¶ 19. On June 18, 2018, the immigration judge ordered Mr. D removed to Sudan, or in the alternative, to South Sudan. Ligon Decl. ¶¶ 21, 23, Ex. 7. Mr. D appealed the immigration judge's removal decision to the Board of Immigration Appeals ("BIA") on July 9, 2018. Ligon Decl. ¶ 24.

On December 6, 2018, the BIA ruled in Mr. D favor on his appeal and remanded the case back to the immigration judge. Decl. of John Bruning ("Bruning Decl.") ¶ 3 & Ex. 1 ECF No. 31. Specifically, the BIA agreed with Mr. D's argument that the immigration judge erred in determining that his conviction for motor-vehicle theft under Minn. Stat. § 609.52, subd. 2(a)(17), constituted an aggravated felony theft offense. Bruning Decl., Ex. 1 at 2–4. The BIA's remand indicated that the Department of Homeland Security would have the opportunity on remand to "lodge any additional charges of removability." *Id.*, Ex. 1 at 4.

Six days after the BIA's decision, immigration authorities filed an additional charge of removability against Mr. D based on his December 2017 conviction for second-degree assault with a dangerous weapon. Bruning Decl. ¶ 4, Ex. 2. The additional charge asserts that the assault conviction constitutes both a crime of violence and a crime involving moral turpitude. *Id.* A new immigration judge held hearings in Mr. D's case on January 2, 2019 and on January 22, 2019. Bruning Decl. ¶ 5. The immigration judge "sustained the new charges of removability and closed the case for a written decision." *Id.* If Mr. D is in fact denied relief and again ordered removed, he anticipates filing another appeal with the BIA.[2] *Id.* ¶ 6. Mr. D remains in ICE custody.

---

[2] Mr. D has a pending petition for post-conviction relief regarding the assault conviction, asserting that he was provided inadequate advice as to the immigration consequences of his guilty plea. Bruning Decl. ¶ 7. It is unclear what impact a favorable ruling on his post-conviction petition would have on Mr. D's immigration proceedings.

II.     Detention and Limitations

Mr. D is being detained pursuant to 8 U.S.C. § 1226(c) pending the completion of removal proceedings against him. Section 1226(c) provides that "[t]he Attorney General shall take into custody any alien who— ... is deportable by reason of having committed [crimes of moral turpitude, aggravated felonies, controlled-substance crimes, and certain firearm offenses]." 8 U.S.C. § 1226(c)(1)(B) (cross referencing 8 U.S.C. §§ 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)). Mr. D claims that his continued detention under this statute for, at this point more than 13 months, violates his constitutional right to due process of law.[3]

The Due Process Clause imposes limitations on the length of § 1226(c) detention. *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052 (D. Minn. Sept. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *report and recommendation adopted*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2390132 (D. Minn. May 25, 2018); *Tindi v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-3663 (DSD/DTS), 2018 WL 7043414, at *3 (D. Minn. Feb. 5, 2018). Although the government urges the Court to find that the Constitution imposes no such restraint on the permissible duration of detention under § 1226(c), the Court finds the reasoning of Judge Schiltz and others to be eminently persuasive in this matter. *Muse*, 2018 WL 4466052, at *2 ("The Supreme Court has long recognized that the Due Process Clause protects aliens who are present within the United States, including those who are subject to removal.... Every federal court of appeals to have addressed the issue after *Demore* [*v. Kim*, 538 U.S. 410 (2003)] has recognized that the Due Process Clause restricts how long the government may detain an alien under § 1226(c)."); *see also Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018) ("The Court likewise concludes based on the text of the Fifth Amendment, the Supreme Court's decisions in *Zadvydas* and *Demore*, as well as the persuasive

---

[3]     In his pro se petition, Mr. D claims not only that his detention violates the Fifth Amendment's Due Process Clause, but also runs afoul of the Eighth Amendment. Pet. at 6–7, ¶ 13, Ground One (citing "8th amendment[]"). However, the parties have not suggested that the Eighth Amendment would entitle Mr. D to any greater relief than that recommended by the Court in this decision. Therefore, the Court does not address the Eighth Amendment claim.

3

interpretation of these cases offered by other federal courts and the Government's concessions in this case, that prolonged mandatory detention under § 1226(c), under certain circumstances discussed below, can become unreasonable such that an alien is 'entitled to an individualized determination as to his risk of flight and dangerousness.'") (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).

Courts analyzing whether § 1226(c) detention has exceeded such limitations "closely examin[e] the facts of the particular case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3. They do so by looking at the following factors to determine whether continued detention has become unreasonable:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)).[4]

### III.   Application of Multi-Factor Test

Mr. D has been detained beyond the "brief" period envisioned by the Supreme Court in *Demore v. Kim*, 538 U.S. 510, 513 (2003), as necessary for the completion of removal proceedings. As his ongoing detention pursuant to § 1226(c) has grown longer, its necessity has become more suspect. *See Muse*, 2018 WL 4466052, at *4 (citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). Weighing the relevant factors under the applicable caselaw, the Court concludes that continuing to detain Mr. D without offering him a bond hearing would violate his rights under the Due Process Clause.

---

[4]   In its reply, the government asserts that *Muse* "has limited applicability here, given the factual distinctions between the two cases." Gov't's Reply at 2, ECF No. 29. Although the government suggests that *Muse*'s reliance on cases decided before *Jennings v. Rodriguez*, 138 S. Ct. 830 (2019), limits its persuasive value, *see* Gov't's Reply at 2, they do not offer any reason why this Court should conclude that the multi-factor test applied in *Muse* provides an inappropriate framework for analyzing Mr. D's due-process claim.

*Length of Detention*

"[C]ourts have described the first factor, which looks at the length of detention, as the most important." *Portillo v. Hott*, 322 F. Supp. 3d 698, 708 (E.D. Va. 2018). The length of Mr. D's detention in this case strongly favors granting relief. ICE took Mr. D into custody on December 22, 2017. Mr. D has been in custody for 416 days. Because detention pursuant to § 1226(c) is mandatory, the government has not made any individualized determination whether Mr. D is a danger to the community or likely to flee while his removal proceedings are pending.

As noted in *Muse*, detentions for shorter periods than the 13 months at issue here "have been found unreasonable under the Due Process Clause." *Muse*, 2018 WL 4466052, at *4 (citing *Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *1, *7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-cv-261, 2015 WL 1176706, *3-4 (S.D.N.Y. March 13, 2015) (eight months)). Given that Mr. D's detention has lasted longer than a year, the Court is reluctant to permit ongoing detention without a bond hearing. *Id.* at *4 (noting that courts "become extremely wary of permitting continued custody absent a bond hearing" when detention exceeds a year and distinguishing cases permitting longer periods of detention because the petitioners were responsible for the delay). For these reasons, the first factor weighs heavily in favor of granting Mr. D's request for habeas relief.

The government argues that the length of Mr. D's detention is distinguishable from the length of detention at issue in *Muse* because Mr. D was sentenced to significant time in criminal confinement. Gov't's Reply at 2-3. In *Muse*, United States District Judge Patrick Schiltz noted that "[s]ome courts ... compare the length of the § 1226(c) detention with the length of the sentences imposed for the 'predicate' convictions that rendered the detainee removable." 2018 WL 4466052, at *3 n.3. Mr. D's sentences for theft and assault were longer than those at issue in *Muse*. *Id.* However, like Judge Schiltz, this Court "does not find this factor particularly helpful" because the length of Mr. D's criminal sentences says very little about whether his detention by federal immigration authorities pending completion of his removal proceeding is constitutionally reasonable or has lasted longer than is permissible. *Id.*

5

*Likely Duration of Future Detention*

The likely duration of Mr. D's future detention also weighs in favor of granting habeas relief. The original immigration judge ordered Mr. D removed on June 18, 2018 approximately six months after he was taken into ICE custody in December 2017. Mr. D successfully appealed that removal order to the BIA, with a final decision remanding the matter back to the immigration judge issued on December 6, 2018. DHS filed a new charge of removability related to Mr. D's assault conviction on December 12, 2018. As of January 23, 2019, there was still no final order of removal in Mr. D's case post-remand.

Based on the history of this proceeding, it will likely be several months before Mr. D receives a decision from the immigration judge. If he is ordered removed, he intends to appeal to the BIA a second time. Bruning Decl. ¶ 6. If a second appeal takes as long as his first, his administrative proceeding could take an additional six months to a year to run its course.

The expected arc of Mr. D's administrative proceedings is likely to prolong his future detention pursuant to § 1226(c). That future detention could last a year or more until it is completed. Continuing his detention without a bond hearing would violate his due-process rights. This factor weighs strongly in favor of granting Mr. D's request for habeas relief.

*Conditions of Detention*

The third factor also weighs in favor of Mr. D's habeas petition. For this factor, the Court considers whether the conditions of Mr. D's detention pending completion of removal proceedings resembles "penal confinement"; the more it does, "the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5 (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). "As the length of the detention grows, the weight given to this aspect of [Mr. D's] detention increases." *Id.* (internal quotation marks and alterations omitted). Mr. D is currently confined in Freeborn County Jail in Albert Lea, MN. He is detained along with individuals serving criminal sentences and awaiting criminal trials. *See* ECF No. 6. The conditions of such confinement are indistinguishable from penal confinement.

### *Delays Caused by Mr. D*

The fourth factor—whether delays of the removal proceedings have been caused by Mr. D—weighs in favor of granting relief. Mr. D has raised legitimate defenses to removal, as evidenced by his successful appeal of the original immigration judge's removal order. However, this factor does not hold the additional time litigating "avenues of relief that the law makes available to him" against a detainee like Mr. D. *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003). The record here shows that Mr. D has not engaged in any dilatory tactics, and the government does not suggest otherwise.

### *Delays Caused by the Government*

The Court next considers delays of the removal proceedings caused by the government. "'Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials.'" *Muse*, 2018 WL 4466052, at *6 (quoting *Sajous*, 2018 WL 2357266, at *11). Here, there is no evidence that the government has engaged in dilatory tactics and Mr. D does not suggest otherwise. Indeed, ICE officials twice asked the original immigration judge to issue a ruling after the first hearing had concluded and the parties were awaiting a decision. Accordingly, the Court finds that this factor weighs in the government's favor.

### *Likelihood of Final Order of Removal*

The last of the factors to be considered is the likelihood that the removal proceedings will result in a final order of removal. For two reasons, it is unclear whether Mr. D is likely to be ordered removed from the United States, and the Court finds that this factor weighs neither in favor of nor against Mr. D's request for habeas relief. First, Mr. D has already raised valid arguments concerning one of the "predicate" offenses forming ICE's grounds for removability in this case and he has indicated he would appeal on similar grounds as before if the immigration judge issues a substantially similar decision. Bruning Aff. ¶ 6. This suggests at least some possibility that Mr. D could prevail at the administrative level. Second, Mr. D's pending petition for post-conviction relief in state court raises a claim that his assault conviction—which forms the basis of the government's second charge of removability against him—was the result of deficient performance of his trial counsel. Mr. D's pending claim under *Padilla v.*

*Kentucky*, 559 U.S. 356 (2010), could potentially invalidate the second ground of removability raised by the government. Bruning Aff. ¶ 7. There is little basis in the record for the Court to assess whether Mr. D's hypothetical second appeal to the BIA could result in a decision in his favor or whether his *Padilla* claim could entitle him to withdraw his guilty plea for the assault conviction. Accordingly, the Court has an insufficient basis to determine whether Mr. D is likely to be removed.

### *Conclusion*

As was the case in *Muse*, four of the factors weigh in favor of Mr. D (two of them strongly), one factor weighs in favor of the government, and one factor is neutral. Overall, the balance is in Mr. D's favor, and "continuing to detain [him] without affording him a bond hearing would violate his rights under the Due Process Clause." *Muse*, 2018 WL 4466052, at *6. Accordingly, the Court recommends that an immigration judge be ordered to conduct a bond hearing within thirty days of any order adopting this Report and Recommendation, so that the parties are able to prepare for and the immigration judge is able to schedule the hearing.[5] "At that hearing, the parties must be allowed to present evidence and argument about whether [Mr. D] is a danger to the community and whether [Mr. D] is likely to flee if he is not detained." *Muse*, 2018 WL 4466052, at *6.

### IV.   Burden

Mr. D argues that "if this Court were to decide to order a bond hearing before an Immigration Judge, the district courts have held that the burden must be borne by the Government to satisfy due process." Pl.'s Mem. at 11–12, ECF No. 28. He argues that the government should bear the burden of establishing by clear and convincing evidence that Mr. D. is a danger to the community or a flight risk. *Id.* at 12. The government objects to any order placing the burden of proof on the government or dictating the quantum of proof the government must

---

[5]   Mr. D argues that he should be granted "unconditional release." Pet'r's Mem. at 11, ECF No. 28. However, he offers no support for such a request beyond his conclusory statements that the immigration judge who held any bond hearing would likely rule against him based on a predetermined outcome. *Id.* The Court finds no support in the caselaw or in Mr. D's briefing to warrant an order that he be released from ICE custody without some individualized custody review being conducted by immigration authorities.

8

meet. Gov't's Reply at 6–14. Although § 1226(c) is silent on this issue, the BIA has found that the alien must bear the burden of proof at such bond hearings. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1110–11 (BIA 1999). The government argues that under *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), this Court must defer to the BIA's interpretation in this matter. *Id.* at 7–12. Moreover, the government asserts that the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), forecloses Mr. D's constitutional challenge to the standard of review at such a proceeding. *Id.* at 12–14.

Neither the Supreme Court nor the Eighth Circuit has clarified who bears the burden of proof (or what quantum of proof is required) in a case like this. Several district courts to have examined the matter conclude that the government must demonstrate dangerousness or risk of flight by a clear-and-convincing standard at an alien's bond hearing. *See, e.g., Melie I. v. Sec'y of Homeland Sec., et al.*, No. 18-cv-1657 (ECT/HB), Doc. No. 40 (D. Minn. Jan. 7, 2019) (concluding that the government bears the burden to prove dangerousness or risk of flight in a bond hearing for an alien detained pursuant to 8 U.S.C. § 1226(a)), *report and recommendation objected to*, Doc. No. 41 (D. Minn. Jan. 22, 2019); *Hernandez v. Decker*, No. 18-cv-5026 (ALC), 2018 WL 3579108 (S.D.N.Y. July 25, 2018) ("[D]ue process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard at Jaimes's bond hearing."); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Pa. 2018) ("[A]t the bond hearing, the government must demonstrate that [the alien] is either a flight risk or a danger to the community by clear and convincing evidence.").

For the reasons articulated in the cases referenced above that place the burden on the government, the Court is not persuaded that *Chevron* requires it to defer to the BIA's interpretation in this context. As Magistrate Judge Bowbeer recently explained in *Melie I.*, "'[a] *Chevron* argument about statutory interpretation does not change the constitutional analysis.'" No. 18-cv-1657 (ECT/HB), Doc. No. 40 at 11 (D. Minn. Jan. 7, 2019) (quoting *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018)). The issue here is not simply whether § 1226's silence on allocation of the burden allows the BIA to pick between two reasonable alternatives. Rather, the question is whether assigning that burden to the alien in a bond hearing comports with the

9

constitutional requirement that all persons receive due process of law. *See id.* (citing *Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at *9 (S.D.N.Y. Nov. 21, 2018); and *Pensamiento*, 315 F. Supp. 3d at 690).

Moreover, the Court agrees with cases concluding that the government must show by clear and convincing evidence that an alien is a danger to the community or a flight risk. "'Freedom from imprisonment' lies 'at the heart of the liberty interest' protected by the Due Process Clause." *Haughton v. Crawford*, 221 F. Supp. 3d 712, 714 (E.D. Va. 2016) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Because the civil detention authorized by § 1226 deprives an individual like Mr. D of his significant liberty interest, subjecting the government to a heightened burden of proof strikes an appropriate balance between that individual interest and the government's interest in protecting the community and effective removal procedures. *See, e.g., Hernandez*, 2018 WL 3579108, at *10–11 (concluding that the "clear and convincing standard would be most consistent with due process" in light of the interests at stake).

The government's argument that *Jennings* forecloses the Court's conclusion that the government ought to bear a clear-and-convincing burden of proof is not persuasive. In *Jennings*, the Supreme Court rejected the argument that the canon of constitutional avoidance required, as a matter of statutory interpretation, that § 1226(c) includes an implicit requirement for bond-review hearings every six months. 138 S. Ct. at 843–46 (distinguishing the unambiguous requirement for detention in § 1226(c) from the ambiguous statute at issue in *Zadvydas*, making resort to the canons of construction appropriate only for the latter). "[B]ecause the *Jennings* majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that *Jennings* has any bearing on the appropriate procedures consistent with due process." *Hernandez*, 2018 WL 3579108, at *11.

V. Recommendation

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT:**

1. The Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 **(ECF No. 1)** should be **GRANTED IN PART** with respect to his Due Process claim.

10

2. Within 30 days of any Order adopting this Report and Recommendation, an immigration judge should be required to provide Mr. D with a bond hearing. At the hearing, the immigration judge should be required to make an individualized determination regarding whether detention is necessary to protect the community or to prevent Mr. D from fleeing.

3. At any bond hearing required by an Order adopting this Report and Recommendation, the Court should require the government to prove by clear and convincing evidence that Mr. D's detention is necessary because he is dangerous or a flight risk.

Date: February 11, 2019                    *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.